IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| NORMA JEAN SMITH, Independent Executor of the Estate of DANIAL L. SMITH, )<br>)<br>)<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>VERIZON NORTH, INC., )<br>)<br>Defendant. ) | No. 07-3069 |

## OPINION

JEANNE E. SCOTT, U.S. District Judge:

This matter is before the Court on Defendant Verizon North, Inc.'s Motion for Summary Judgment (d/e 20). Danial Smith (Smith) was an employee of Defendant Verizon North, Inc. (Verizon) from 1998 until April 17, 2004. After his employment was terminated, Smith filed suit against Verizon in Illinois state court. Verizon removed the matter to this Court in March 2007. Smith subsequently filed a four-count Amended Complaint (d/e 8). Danial Smith died while this suit was pending, and the Court substituted the Executor of his estate, Norma Jean Smith, as Plaintiff. See Text Order, dated January 16, 2008. Verizon moves for summary judgment

1

on each of Plaintiff's claims.  <u>Defendant's Motion for Summary Judgment (d/e 20)</u>.  For the reasons set forth below, Verizon's Motion for Summary Judgment is allowed.

BACKGROUND

Smith began full-time employment with Verizon on approximately March 9, 1998.[1]  Smith was a member of the International Brotherhood of Electrical Workers Local 51 (the Union) which, at all relevant times, had a Collective Bargaining Agreement (CBA) with Verizon.  The applicable CBAs are before the Court.  <u>See</u> <u>Defendant's Memorandum of Law in Support of Motion for Summary Judgment (d/e 21) (Defendant's Memorandum)</u>, Ex. 4, <u>Declaration of Mike Kruger (Kruger Dec.)</u>, Exs. A & B.  Plaintiff concedes that, "[a]t all relevant times, the applicable CBA explained a represented employee's right to reinstatement after a medical leave of absence." <u>Defendant's Memorandum</u>, p. 3, Undisputed Material Fact No. 5.  Plaintiff also concedes that Verizon's Leave of Absence Policy is as set forth in an Exhibit entitled "Personal Leave Toolkit" and that the policies set out in the

---

[1] Plaintiff concedes all of the facts set out in Verizon's Statement of Undisputed Material Facts.  See <u>Plaintiff's Response to Defendant's Motion for Summary Judgment (d/e 23) (Plaintiff's Response)</u>, p. 2.  According to Plaintiff, "[t]he only disputed material fact is whether [Smith] was capable of returning to work at his former position." <u>Id.</u>, p. 3.

2

Toolkit apply to employees covered by the CBAs who are granted a personal leave of absence. Id., Undisputed Material Fact No. 6; see also Kruger Dec., Ex. C, Personal Leave Toolkit.

Smith was employed by Verizon as a Cable Technician. The parties agree that the physical demands of this position include climbing poles and ladders, frequently lifting fifty pounds and occasionally lifting up to one hundred pounds on the ground and aloft, pushing, reaching, bending, hand digging, stooping, prolonged standing, manual dexterity, a good sense of balance, and good color vision. It is undisputed that Cable Technicians must also have a Commercial Driver's License.

From January 3, 2003, to September 6, 2003, Smith took a medical leave of absence, during which he received short-term disability payments. In February 2003, Smith was diagnosed with a brain tumor. At the time Smith's medical leave expired in September 2003, his doctor, Dr. Brian Russell, wrote a letter indicating that Smith could return to work without restrictions. Verizon, however, required Smith to undergo an independent medical examination prior to allowing him to return to work. Thus, on September 23, 2003, Smith was placed on personal leave of absence, pending the independent medical exam.

On September 24, 2003, Smith filed a Grievance. <u>Notice of Errata Regarding Ex. 6 to Memorandum of Law in Support of Motion for Summary Judgment (d/e 22)</u>, p. 14, Grievance Report (Grievance). In the Grievance, Smith stated that he had been told by Verizon that he could not return to work because he was a danger to his coworkers. Smith asserted that "[t]his decision was based on Metlifes [sic] negativity about [him] returning to work" and that all of his doctors had released him to work "100% with no restriction." <u>Id</u>. Smith concluded by stating that he would like to return to his job.

The Union represented Smith in the grievance process. The procedures applicable at the time provided that, after a written Grievance is filed with the employer, the employer had ten days to respond to the Grievance. If the response did not resolve the matter, officials from the Union and the employer would meet to discuss the grievance. <u>Defendant's Memorandum</u>, p. 5, Undisputed Material Fact No. 19. Plaintiff concedes that the Union was committed to helping Smith and tried to resolve his grievance, addressing it in the same manner as other similar grievances. Verizon responded to the grievance within the allotted ten days, but in the Union's opinion, the response did not resolve the grievance. Thus, the

4

Union scheduled a meeting with Verizon representatives concerning Smith's grievance.

Union representative Jim Bates attended the meeting on Smith's behalf. Bates understood that Verizon would base its determination of whether Smith could return to work on the results of the independent medical examination. Defendant's Memorandum, p. 6, Undisputed Material Fact No. 20. Bates reminded Verizon of its contractual obligation to place Smith in another position consistent with any medical restrictions that he might have if such a position were available. Id.

The independent medical examination was conducted in October 2003, by Dr. Warach. Warach concluded that Smith was subject to the following work restrictions: no climbing of poles or ladders, no safety sensitive work including driving, no DOT driving, and no operating any equipment or machinery. These restrictions were noted to be permanent in duration. Defendant's Memorandum, Ex. 7, Declaration of Donna Spencer (Spencer Dec.), Ex. A.

According to Verizon, no positions meeting these restrictions were available, and Smith remained on personal leave of absence. Bates testified in deposition that, at some point, he was informed that the independent

medical examination had revealed that Smith was unable to return to his former position.  Defendant's Memorandum, Ex. 3, Deposition of James R. Bates, p. 28.  According to Bates, Verizon informed him that it had looked for other bargaining unit openings, but found none.  Id.  Bates concluded that there was nothing left for the Union to do at this point.  Bates called Smith and informed him that the grievance was being "dropped."  Id., p. 30.  According to Bates, Smith did not ask him to reconsider the decision to drop the grievance, nor did he complain to Bates about the way in which it was handled.

Plaintiff concedes that, during this time, Verizon searched for open positions compatible with Smith's work restrictions and that Verizon was very interested in maintaining Smith's status as a Verizon employee.  Defendant's Memorandum, p. 4, Undisputed Material Fact No. 13.  Plaintiff further concedes that, while Smith was on personal leave of absence, he was offered an office position in the Bloomington/Normal, Illinois area that met the medical restrictions.  Smith declined this position because he did not want to relocate one hundred miles from his home in Nokomis, Illinois.  Verizon continued to work with Smith to find another position, and Smith remained on personal leave of absence.

Smith's personal leave of absence expired on March 21, 2004. Smith did not return to work, and his employment was terminated on April 17, 2004. Plaintiff concedes that Smith's employment was terminated "pursuant to [Verizon's] personal leave of absence policy, which provided that, at the end of a personal leave of absence, 'if no modified position or schedule is available, employment will be terminated effective with the last day of the approved leave.'" Defendant's Memorandum, p. 5, Undisputed Material Fact No. 16 (quoting Kruger Dec., Ex. C, Personal Leave Toolkit, p. 6). It is also undisputed that Smith did not file a grievance related to the termination of his employment in April 2004. Defendant's Memorandum, p. 7, Undisputed Material Fact No. 24.

Smith filed the instant lawsuit in Illinois state court. After the matter was removed, he filed the pending four-count Amended Complaint, which alleges retaliatory discharge (Count I), breach of employment agreement between Plaintiff and Defendant (Count II), breach of employment agreement with Plaintiff as a third-party beneficiary (Count III), and wrongful discharge (Count IV). Verizon seeks summary judgment on all of Plaintiff's claims. Verizon argues that all of the claims must be treated as claims under § 301 of the Labor Management Relations Act (LMRA),

because they necessarily involve the interpretation of the CBAs. See 28 U.S.C. § 185. Section 301 gives federal courts jurisdiction over suits to enforce the terms of collective bargaining agreements and allows an employee to file suit based on the alleged violation of a collective bargaining agreement between the employee's union and the employer. Verizon contends, however, that Plaintiff fails to identify evidence sufficient to establish a § 301 claim and that Plaintiff's claims are barred under § 301's six-month statute of limitations in any event. Alternatively, Verizon contends that Plaintiff is unable to succeed under state law theories.

## ANALYSIS

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The moving party has the initial burden of demonstrating the absence of a genuine issue of material fact and that judgment as a matter of law is appropriate. Celotex Corp. v. Catrett, 477

U.S. 317, 324 (1986). When a properly supported motion for summary judgment has been made, the party opposing summary judgment may not merely rest on the pleadings but must "set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). "A party must present more than mere speculation or conjecture to defeat a summary judgment motion." Liu v. T & H Machine, Inc., 191 F.3d 790, 796 (7th Cir. 1999). The Court must consider the evidence in the light most favorable to the non-moving party, here the Plaintiff, and draw all reasonable inferences in her favor. See Anderson, 477 U.S. at 255. Verizon argues that all of Plaintiff's claims must be treated as claims under § 301, because they necessarily involve interpretation of the CBAs. Plaintiff responds that the claim that Smith was discharged in retaliation for exercising his right to a leave of absence does not require interpretation of the CBA and, thus, is not preempted by § 301. The Seventh Circuit has instructed as follows:

> Due to the importance of uniformity in labor law, any state law claim substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract will be completely preempted by section 301 of the LMRA. However, where a state law cause of action requires mere reference to a CBA, section 301 preemption will not necessarily apply.

Tifft v. Commonwealth Edison Co., 366 F.3d 513, 516 (7th Cir. 2004)

(internal quotations and citations omitted).  Applying these principles to the instant case, it is clear that all of Plaintiff's claims, including the retaliatory discharge claim, are preempted.  Counts II and III are straight breach of contract claims arising out of the CBAs.  Plaintiff's wrongful discharge claim (Count IV) relies on rights established by the CBAs.  The retaliatory discharge claim (Count I) necessarily involves an analysis of the leave of absence and reinstatement provisions of the CBAs.  Thus, Plaintiff's claims are completely preempted by § 301, and the Court turns its attention to that statute.

As set forth above, § 301 permits a union member to sue his employer for alleged violations of a CBA.  However, where, as here, "the union and the employer have agreed to submit disputes to a grievance-arbitration process, the employee must first show that the union has breached its duty of fair representation."  Flores v. Levy Co., 757 F.2d 806, 808 (7th Cir. 1985).  The Seventh Circuit has explained that "[t]he cause of action against the union is implied under the National Labor Relations Act" and, thus, "[t]o prevail against either the employer or the union . . . the employee must show that the employer's action was contrary to the collective bargaining agreement and that the union breached its duty."  Id.  A union

breaches its duty of fair representation when its conduct toward one of its members is demonstrated to be arbitrary, discriminatory, or in bad faith. Crider v. Spectrulite Consortium, Inc., 130 F.3d 1238, 1243 (7th Cir. 1997). There is nothing in the record of the instant case that would permit a reasonable fact-finder to conclude that the Union breached the duty of fair representation it owed to Smith. It is uncontested that Smith did not file a grievance related to the termination of his employment in April 2004. Defendant's Memorandum, p. 7, Undisputed Material Fact No. 24. "Generally, an employee must exhaust the CBA's grievance procedures before pursuing judicial remedies; however, an employee may be excused from doing so if: (1) resorting to the grievance procedure would be futile; (2) the employer through its conduct repudiated the grievance procedure itself; or (3) the union breached its duty of fair representation." McLeod v. Arrow Marine Transport, Inc., 258 F.3d 608, 616 (7th Cir. 2001). Plaintiff fails to identify evidence to support a finding that any of these exceptions apply. Thus, Smith's failure to grieve his termination bars any claims arising out of it.

Additionally, with respect to the September 2003 Grievance, Plaintiff concedes that the Union was committed to helping Smith and that it

handled the grievance in the same manner it did other similar grievances. Defendant's Memorandum, p. 5, Undisputed Material Fact No. 18-19. There is no evidence of arbitrary or discriminatory conduct or bad faith on the part of the Union in dealing with the September 2003 Grievance. On this record Plaintiff cannot obtain relief from Verizon under § 301 because she cannot show that the Union breached its duty of fair representation. See Neal v. Newspaper Holdings, Inc., 349 F.3d 363, 371 (7th Cir. 2003). Because any state claims are displaced by § 301 and Plaintiff fails to identify evidence sufficient to support a § 301 claim, Verizon is entitled to summary judgment on all of Plaintiff's claims.[2]

Even if the retaliatory discharge claim were not preempted, Verizon would nevertheless be entitled to summary judgment. A valid claim for retaliatory discharge under Illinois law "requires a showing that an employee has been (1) discharged; (2) in retaliation for the employee's activities; and (3) that the discharge violates a clear mandate of public policy." Hartlein v. Illinois Power Co., 601 N.E.2d 720, 728 (Ill. 1992). The Illinois

---

[2]In light of this conclusion, the Court does not reach Verizon's statute of limitations argument, but notes the lack of record evidence as to the date on which Smith discovered or should have discovered the acts constituting the alleged violation. See Cortina v. Hotel and Restaurant Employees Union, 2008 WL 857165, *4 (N.D.Ill. Mar. 31, 2008).

Supreme Court has held that "[t]he element of causation is not met if the employer has a valid basis, which is not pretextual, for discharging the employee." Id. Significantly, Plaintiff concedes that Smith's employment was terminated because he did not return to work after his personal leave of absence expired. Defendant's Memorandum, p. 5, Undisputed Material Fact No. 15. Additionally, Plaintiff fails to identify any evidence to support a finding of retaliation, an essential element of the claim. Thus, summary judgment is appropriate in favor of Verizon on Plaintiff's retaliatory discharge claim on this basis as well.

## CONCLUSION

THEREFORE, for the reasons set forth above, Defendant's Motion for Summary Judgment (d/e 20) is ALLOWED. Judgment is entered in favor of Verizon on all of Plaintiff's claims. All pending motions are denied as moot. This case is closed.

IT IS THEREFORE SO ORDERED.

ENTER: July 22, 2008

FOR THE COURT:

s/ Jeanne E. Scott
JEANNE E. SCOTT
UNITED STATES DISTRICT JUDGE